**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
-----------------------------------------------------------------x

In re:

POPULAR CLUB PLAN, INC.,                    Chapter 11

Debtor.                                     Case No.: 06-17231 (MBK)

-----------------------------------------------------------------x

STEPHEN B. RAVIN, TRUSTEE
POP POST-CONFIRMATION TRUST
                         Plaintiff,
     - against -

MORRIS TRUMAN, L.L.C.                       Adv. Pro. No.: 08-2025
                         Defendant.
-----------------------------------------------------------------x

**APPEARANCES:**

David H. Stein, Esq.
Wilentz, Goldman & Spitzer, P.A.
90 Woodbridge Center Drive
P.O. Box 10
Woodbridge, New Jersey 07095-0958
Attorneys for Morris Truman Associates, L.L.C.,
improperly pled as Morris Truman, L.L.C.

Barry W. Frost, Esq.
Teich Groh
691 State Highway 33
Trenton, New Jersey 08619
Attorneys for Stephen B. Ravin, Trustee
POP Post-Confirmation Trust

**MICHAEL B. KAPLAN, U.S.B.J.**

**OPINION**

**I.      Jurisdiction**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(F).  Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

**II.     Facts And Procedural History**

1.  On August 4, 2006, Popular Club Plan, Inc., a N.J. Corporation ("Debtor"), filed a Voluntary Petition for Relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey.

2.  Years before filing that petition, on October 16, 2001, Debtor entered into a commercial lease agreement (the "Lease") with Morris Truman Associates, L.L.C. ("Morris"), whereby Morris agreed to lease real property to the Debtor for the operation of Debtor's business.

3.  On August 22, 2006, Debtor filed a Motion to Reject the Lease *Nunc Pro Tunc*, effective as of August 7, 2006.  That motion was granted, and on September 18, 2006, this Court entered the Order to that effect.

4.  On December 1, 2006, in response to Debtor's rejection of the Lease, Morris filed a Proof of Unsecured Claim against the Debtor in the amount of $2,512,098.36.  Debtor informally objected to Morris's claim, and, after negotiations between the parties outside of this Court's purview, Morris's claim was modified and reduced to an unsecured, nonpriority claim in the amount of $2,342,888.91.

5.  On December 3, 2007, the parties submitted, and this Court entered, a Consent Order (the "Consent Order") reflecting Morris's previously modified and

reduced claim.

      6. Prior to entering the Consent Order, on October 29, 2007, this Court confirmed Debtor's Chapter 11 Plan (the "Confirmation Order"). The Confirmation Order created the POP Post-Confirmation Trust and appointed Stephen B. Ravin as Trustee, the Plaintiff in this adversary proceeding. Mr. Ravin was formerly counsel for the Official Unsecured Creditors' Committee.

      7. Plaintiff brought this present action against Morris to avoid and recover alleged preferential transfers pursuant to 11 U.S.C. §§ 547, 549, and 550. Plaintiff's Complaint alleged that, during the ninety-day preference period, Morris "received a total of $350,434.32" from Debtor's property "on account of an antecedent debt owed by the Debtor. *Plaintiff's Complaint at 5*.

      8. Morris, in defense to the Complaint, moved to dismiss the Complaint in lieu of filing an answer pursuant to Fed R. Civ. P. 12(b)(6) ("Motion"). Morris contended that Plaintiff's claims were barred under 11 U.S.C. § 502(d) because Plaintiff had previously agreed to Morris's modified and reduced claim amount, as reflected in the Consent Order.

      9. Arguments were heard before this Court on October 3, 2008. This Court denied Morris's motion, in part, and indicated that a written opinion would be docketed supporting its decision.

**III.    Standard for Dismissal under Federal Rule of Civil Procedure 12(b)(6)**

      Pursuant to Fed R. Civ. P. 12(b)(6), made applicable to this proceeding by Fed. R.

Bankr. P. 7012(b), a party may move to dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b). When considering a Rule 12(b)(6) motion, the reviewing court must accept all of the factual allegations contained within the complaint as true. *U.S. v. Gaubert*, 499 U.S. 315, 327 (1991). In addition, all reasonable inferences should be drawn in favor of the plaintiff. *Gary v. Air Group, Inc.*, 397 F.3d 183, 186 (3d Cir. 2005). As the Supreme Court of the United States recently explained in *Bell Atlantic Corp. v. Twombly*:

> Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . .

127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Ultimately, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

The Rule 12(b)(6) motion to dismiss is very limited in terms of what may be considered from an evidentiary standpoint. Given this narrow scope, a court hearing a Rule 12(b)(6) motion will "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Industries*, 998 F.2d 1192, 1196 (3d Cir. 1993). In addition, "a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997).

**IV.** **Discussion**

*(1) Denying Morris's Rule 12(b)(6) Motion to Dismiss*:

This Court denies, in part, Morris's Motion to Dismiss under Fed R. Civ. P. 12(b)(6), as it does not fail to state a claim upon which relief may be granted. The Complaint's factual allegations include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp.*, 127 S. Ct. at 1965.

In this regard, this Court notes that the Complaint alleges a specific transfer by the Debtor to Morris in the amount of $350,434.32, made within ninety (90) days of the bankruptcy filing, and paid on account of an antecedent debt owed by the Debtor. Additionally, Plaintiff asserts in the Complaint that the alleged transfer enabled Morris to receive more funds than it would have received had Debtor filed under Chapter 7 of the Bankruptcy Code. Taken together, these averments include enough factual support to rise above mere speculation and establish grounds for entitlement to relief

*(2) Rule 12(e) and amending Plaintiff's Complaint*:

Notwithstanding the denial of Morris's Motion to Dismiss, this Court finds that Plaintiff's Complaint nevertheless remains deficient so as to deny Morris the ability to frame a responsive pleading. Plaintiff's Complaint is a form complaint devoid of specific facts surrounding the alleged preferences. Moreover, Plaintiff's Complaint mischaracterizes Morris as being a supplier goods or services, rather than identifying Morris as Debtor's commercial landlord. The sparse information provided for in the Complaint prevents Morris from formulating effective defenses.

In such cases, Fed R. Civ. P. 12(e) permits a party to move for a more definite statement. Morris did not move before this Court to make such request; however, the

issue was raised and discussed during oral argument. This Court believes, and the parties agree, that requesting Plaintiff to provide Morris with a more definite statement is the correct mechanism to remedy the Complaint's deficiencies. Therefore, in lieu of requiring Morris to file a Rule 12(e) motion, this Court directs Plaintiff to file an amended complaint—within ten (10) days from the entry of the order denying, in part, the subject motion—to further specify and define its factual allegations and to tailor its complaint to address its claims against Morris. Specifically, the amended complaint should identify the particular claims pursued by Plaintiff, the amounts and dates of those alleged transfers, and the nature and amount of the antecedent debt against which the transfer was applied.

*(3) 11 U.S.C. § 502(d) and Waiver of Trustee's Preference Claim:*

Morris's Motion to Dismiss poses a question of first impression before this Court: Whether a bankruptcy trustee, having agreed with a creditor to a modified, reduced claim, thereby waives his right to later bring a preference action against that creditor. This Court holds that, notwithstanding the failure to raise a preference objection to a creditor's claim, a trustee does not waive these rights pursuant to 11 U.S.C. § 502(d). The bases for this holding lie in the Bankruptcy Code, the preclusion doctrines, the Federal Rules of Civil Procedure, and the practical effects of a contrary holding. Furthermore, the inapplicability of the entire controversy doctrine serves as a final girder to support this decision.

In this case, Morris argues that 11 U.S.C. § 502(d) precludes Plaintiff from seeking to avoid a preferential transfer, because implicit in the Consent Order modifying Morris's claim "is a determination that Morris was not the recipient of any preferential payment . . . ." *Brief of Morris at 12*. Morris contends that Plaintiff knew or should have

known of the alleged preference at the time of consenting to the reduced amount, and that the objection should have been raised at that juncture. Plaintiff, in response, argues that 11 U.S.C. § 502(d) serves only as a shield for the Trustee and not as waiver, thereby granting a windfall to Morris.

Pursuant to 11 U.S.C. § 502(d), a bankruptcy court shall disallow a claim of an entity having received a preferential transfer. This section "requires disallowance of a claim of a transferee of a voidable transfer *in toto* if the transferee has not paid the amount or turned over the property received as required under the sections under which the transferee's liability arises." *Collier on Bankruptcy* P 502.05[1] (15th ed. rev. 2003) (internal citation omitted). This section has been interpreted to operate as an affirmative defense for the debtor. *See Gold v. Eccleston (In re Dornier Aviation (N. Am.), Inc.)*, 320 B.R. 831 (E.D.Va. 2005) (reading § 502(d) as an affirmative defense for debtors against creditors' claims).

This Court begins its analysis by first looking to the plain language of § 502(d), which clearly provides the means by which a trustee or debtor in possession may disallow a creditor's claim when such creditor owes money or other assets to the estate, *e.g.*, preferential transfers. "Nowhere does the plain language of the statute provide or even suggest a corollary right of creditors to dispute avoidance actions on the basis of previously settled claims." *In re Dornier Aviation*, 320 B.R. at 837. As the statute is unambiguous, this Court "may not read into its language unstated or implied meaning." *Id.*

Second, the Bankruptcy Code does not affirmatively require a party to raise such objections during the claim-allowance process. *See In re Rhythms Netconnections Inc.*, 300 B.R. 404, 410 (Bankr. S.D.N.Y. Sept. 24, 2003) (holding that "there is no

requirement that preference claims be brought as compulsory counterclaims, even to a proof of claim"); *Cohen v. Tic Fin. Sys. (In re Ampace Corp.)*, 279 B.R. 145, 163 (Bankr. D.D.W. May 3, 2002) (same).  The primary conditions for § 502(d) to apply are (1) that there is a recipient of a preferred transfer and (2) that such recipient has not "paid the amount, or turned over any such property, for which [it] is liable" under § 550. *In re Ampace Corp.*, 279 B.R. at 163 (citing 11 U.S.C. § 502(d)).  It is irrelevant, then, for the purposes of § 502(d), whether a debtor in possession or trustee objected to a creditor's claim that has since been allowed.  *Id.*  Plaintiff, therefore, was not required to have objected during the claim-allowance process with Morris, nor is Plaintiff precluded now from so doing.

For additional guidance, this Court looks to current case law from the District of Delaware as persuasive authority.  The Delaware Bankruptcy Courts had previously been presented with this question, which resulted in split decisions.  In *Caliolo v. Saginaw Bay Plastics, Inc. (In re Cambridge Holdings)*, 2006 WL 516764 (D. Del. Mar. 2, 2006), an unreported decision acknowledging and addressing the split, the District Court for the District of Delaware held that the bankruptcy trustee did not waive the right to initiate a preference action against a creditor to whom objections to claim amounts were made.

The district court's analysis began by first distinguishing the case from the Supreme Court's decision in *Katchen v. Landy*, 382 U.S. 323 (1966).  In *Katchen*—which involved § 502(d)'s predecessor, § 57(g)—the issue facing the Supreme Court was "whether a bankruptcy court has summary jurisdiction to order the surrender of voidable preferences asserted and proved by the trustee in response to a claim filed by the creditor who received the preferences." *Id.* at 325.  The Supreme Court ultimately held that jurisdiction did exist as the Bankruptcy Code is designed "to secure a prompt and

effectual administration and settlement of the estate of all bankrupts within a limited period" and proceeding. *Id.* at 328–29 (internal citations omitted).

The district court, however, found that "*Katchen* does *not* stand for the proposition that the trustee waives his right to initiate a preference action against a creditor if he fails to raise a preference objection during the claims-allowance process." *In re Cambridge Holdings*, 2006 WL 516764 at *2. *Katchen* focused on the relationship between a preference action and the claim-allowance process, but simply in a jurisdictional sense. *Peltz v. Golfcoast Workstation Group (In re Brindge Info. Sys., Inc.)*, 293 B.R. 479, 488 (Bankr. E.D.Mo. May 28, 2003). After distinguishing *Katchen*, the district court reasoned as follows:

> [S]ection 502(d) is a shield the trustee may raise during the claims-allowance process to deflect the claims of preference transferees . . . . Certainly, if a trustee consents to allow the claim of a preference transferee, his failure to invoke § 502(d) inures to the benefit of that transferee. But, to turn a benefit into a windfall by engrafting a § 547 waiver onto § 502(d) would pervert the letter and spirit of the law, both of which disfavor preferences.

*Id.* at *2. To that end, the district court concluded that the debtor could initiate its preference action.

This Court agrees with the analysis and decision in *In re Cambridge Holdings* and rules the same. Additionally, there is a practical effect to this Court's holding: In many Chapter 11 cases, the plan confirmation process turns on the resolution of a number of large claims within a short time-frame as mandated by the Bankruptcy Code and Rules. As a result, there is a strong need for the debtor in possession and/or trustee to resolve claim contests long before any preference analysis is undertaken. Bringing a preference analysis while the estate is conducting a claim-allowance process may be a waste of estate resources. Moreover, there is a need for an ongoing working relationship between

creditors and debtors at the reorganization and confirmation stage of the proceeding. Compelling the trustee to bring a preference action at that time could potentially thwart the progress of that relationship and any resulting consensual reorganization.

Final tangential support for this Court's decision rests in the "entire controversy doctrine"—or rather the doctrine's inapplicability to this instant case. Although neither party raised that argument, Morris's objection to the Debtor's preference claim subtly advances concerns to which the doctrine addresses. To comment on that issue and to further underscore its decision, this Court, therefore, directs its last words to the entire controversy doctrine. The entire controversy doctrine is a creature of New Jersey case law, which states that "a party cannot withhold part of a controversy for separate later litigation even when the withheld component is a separate and independently cognizable cause of action." *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 137 (3rd Cir. 1999).

The entire controversy doctrine applies more predominantly in state court as opposed to federal court, save a federal court sitting in diversity jurisdiction. When the doctrine is applied in bankruptcy court, it usually appears in cases where a previous state court action occurred and resulted in a judgment ordered. *See*, *e.g.*, *Paterson v. Scherer (In re Hudsar, Inc.)*, 199 B.R. 266 (Bankr.D.N.J. Apr. 2, 1996); *Crispino v. Chemical Bank N.J., N.A. (In re Crispino)*, 160 B.R. 749 (Bankr.D.N.J. Nov. 17, 1993). The instant case is not a descendent of a state court proceeding, nor has a state court judgment been issued. The entire controversy doctrine, therefore, does not apply here; rather, the broader and more flexible joinder rules found in Fed. R. Civ. P. 18 apply.

Were the doctrine to apply in the present matter, it could be said that Plaintiff was required to bring his preference action—a "component" of the dispute over the claim—at

the time of the claims allowance process.  But that is not the case.  Between the doctrine's inapplicability here, coupled by the fact that neither the Bankruptcy Code nor the Federal Rules of Civil Procedure compel the fusion of both issues, this Court holds that Plaintiff did not waive its right to recover on an alleged preferential transfer.

**V.**     **Conclusion**

This Court concludes that § 502(d) does not preclude Plaintiff from bringing a preference action against Morris.  Plaintiff was not required by the Bankruptcy Code to object to Morris's claim as a preferential transfer during the claim-allowance process.  Furthermore, failing to raise that objection does not preclude Plaintiff from raising it at this time.  Section 502(d) is a shield—"if the trustee fails to raise the § 502(d) shield, he does not thereby drop the sword sheathed in § 547." *In re Cambridge Industries Holdings, Inc.*, 2006 WL 516764 at *2.

Dated: October 27, 2008

_____
Honorable Michael B. Kaplan
United States Bankruptcy Judge